# EXHIBIT G

Westlaw.

--- F.3d ----
--- F.3d ----, 2008 WL 151273 (C.A.9 (Nev.)), 08 Cal. Daily Op. Serv. 645, 2008 Daily Journal D.A.R. 841
(Cite as: --- F.3d ----)

Page 1

**H**
**Plumlee v. Masto**

United States Court of Appeals, Ninth Circuit.
Lary James **PLUMLEE**, Petitioner-Appellant,
v.
Catherine Cortez MASTO, Attorney General State of Nevada; E.K. McDaniel, Warden, Respondents-Appellees.
No. 04-15101.

Argued and Submitted Oct. 9, 2007.
Filed Jan. 17, 2008.

Jason F. Carr, AFPD, Las Vegas, NV, for the petitioner-appellant.
Joseph W. Long, Deputy Attorney General, Ely, NV, for the respondent-appellee.
David K. Neidert, Deputy Attorney General, Reno, NV, for the respondent-appellee.

Appeal from the United States District Court for the District of Nevada; David Warner Hagen, District Judge, Presiding. D.C. No. CV-00-00244-DWH/VPC.

Before ALEX KOZINSKI, Chief Judge, MARY M. SCHROEDER, HARRY PREGERSON, BARRY G. SILVERMAN, M. MARGARET McKEOWN, RAYMOND C. FISHER, RONALD M. GOULD, RICHARD R. CLIFTON, CONSUELO M. CALLAHAN, SANDRA S. IKUTA, and N. RANDY SMITH, Circuit Judges.

**OPINION**

SILVERMAN, Circuit Judge:
*1 The Supreme Court has held that a criminal defendant has a constitutional right to counsel who is free of conflicts of interest. It also has held that a defendant does not have a constitutional right to an appointed lawyer with whom he has a "meaningful relationship" so long as the lawyer acts as the client's advocate. In this case, appellant Lary James **Plumlee** contends that he was unconstitutionally forced to represent himself when the Nevada state trial court refused to replace the Public Defender's Office, which he came to distrust and with which he would not cooperate. He claims that he had developed an "irreconcilable conflict" with counsel. Before the trial began, and again in state post-conviction proceedings, the trial judge made inquiry and found no actual conflict underlying **Plumlee's** refusal to work with his appointed lawyer because counsel committed no misconduct, and **Plumlee's** reasons for distrusting the lawyer were not supported.

We hold today that the Nevada Supreme Court did not misapply clearly established federal law as determined by the Supreme Court when it ruled that **Plumlee's** right to the effective assistance of counsel was not violated by the trial judge's refusal to appoint a different lawyer.

**I. Background**

On June 4, 1991, **Plumlee** was charged in Washoe County, Nevada with the armed robbery and murder of Wilbur Richard Beard. The Washoe County Public Defender's Office was appointed to represent him, and **Plumlee** was assigned Deputy Public Defender David Allison. Allison's boss was Chief Deputy Public Defender Shelly O'Neill.

Shortly after his arrest, **Plumlee** heard through the grapevine that O'Neill was good friends with his roommate, John Dewey, who also was a suspect in the Beard robbery and murder. **Plumlee** came to believe that O'Neill had leaked to Dewey privileged information-namely, that **Plumlee** was going to point the finger at Dewey.

**Plumlee** also came to distrust Allison. Prior to being assigned to **Plumlee's** case, Allison had applied for a position at the Washoe County District Attorney's Office, but had not, **Plumlee** claimed, mentioned that to **Plumlee**. Allison received a job offer from the D.A.'s Office during his representation of **Plumlee** and took the job. **Plumlee** believed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----    Page 2
--- F.3d ----, 2008 WL 151273 (C.A.9 (Nev.)), 08 Cal. Daily Op. Serv. 645, 2008 Daily Journal D.A.R. 841
(Cite as: --- F.3d ----)

that Allison had deceived him about his applicant status at the D.A.'s Office when **Plumlee** had asked him about it.

In addition, **Plumlee** came to believe that, before Allison started his new job, he was leaking privileged information to the D.A.'s Office. **Plumlee** claimed that the police had released his car from impound to the lienholder soon after **Plumlee** had told Allison that exculpatory evidence might be found in the vehicle.

Steven Gregory was assigned to **Plumlee's** case after Allison left for the D.A.'s Office. Two events caused **Plumlee** to believe that Gregory was acting against his interest. First, Gregory had presented **Plumlee** with a plea offer after **Plumlee** had told him that he wanted plea discussions to move forward only with his prior approval. Second, after **Plumlee** learned of a bail order and attempted to discuss it with Gregory, the attorney told **Plumlee** that he "needed psychiatric treatment, because no bail order existed." In fact, the order did exist but had been misplaced.

*2 Shortly thereafter, Gregory moved to have the Public Defender's Office "relieved" from the case because a lack of trust was inhibiting the formation of a functional attorney-client relationship. In an affidavit in support of the motion, Gregory attested to **Plumlee's** general distrust of the Public Defender's Office and, specifically, **Plumlee's** suspicion that Allison had been leaking information to the D.A.'s Office about his case. The trial judge, Judge Mills Lane, III, held a proceeding in open court to consider the motion, at which **Plumlee** was present. At the hearing, Judge Lane heard from both Gregory and the prosecution about the alleged leaks from Allison to the D.A.'s Office. He also inquired into the problems with the attorney-client relationship. Gregory told the Judge that, "unfortunately, because of Mr. **Plumlee's** mistrust with the Public Defender's Office and anyone attached to the Public Defender's Office, he is unable to properly assist me, therefore, making my efforts less than effective." Shelly O'Neill's friendship with John Dewey was not mentioned. At the conclusion of the proceedings, Judge Lane found that no improper conversations occurred, and that no conflict was created by Allison's transfer to the D.A.'s Office. Also, citing the rule enunciated by the Supreme Court in *Morris v. Slappy,* 461 U.S. 1, 14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), that the Sixth Amendment does not entitle a defendant to a "meaningful relationship" with his attorney, Judge Lane denied the motion to remove the Public Defender's Office from the case.

About two weeks later, **Plumlee** through Gregory moved to disqualify the Washoe County D.A.'s Office from prosecuting his case because of an alleged imputed conflict arising from Allison's new job with that office. Judge Lane found that Allison had been adequately screened from the matter within the D.A.'s Office and denied the motion.

At the hearing on the motion to disqualify the D.A.'s Office, Gregory renewed his motion to relieve the Public Defender's Office of its representation of **Plumlee**. The motion was again denied. Judge Lane then informed **Plumlee** that he had the right to be represented by competent counsel and that Gregory *was* competent counsel. Judge Lane told **Plumlee** that he also had the constitutional right to represent himself, but those were his only two options. Judge Lane made it clear that he would not remove Gregory and appoint private counsel in his place.

The next day, in revisiting the issue of **Plumlee's** possible self-representation, Judge Lane told him, "the rules are going to apply to you same as they apply to everybody else, but if you want to exercise your constitutional right to be your lawyer and defend yourself in this offense, that motion will be granted." **Plumlee** stated that he wanted to act as his own attorney and the Public Defender's Office was appointed as stand-by counsel. Gregory tried once more to persuade the court to relieve his office of the case, stating, "[i]t's obvious that the reason Mr. **Plumlee** wants to represent himself is he doesn't trust the Public Defender's Office. To order us to be stand-by counsel, in effect, gives him no stand-by counsel." Judge Lane was not persuaded

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 151273 (C.A.9 (Nev.)), 08 Cal. Daily Op. Serv. 645, 2008 Daily Journal D.A.R. 841
(Cite as: --- F.3d ----)

Page 3

and refused to appoint different stand-by counsel for **Plumlee**.

**\*3** At a subsequent hearing, **Plumlee** was again advised by Judge Lane of his right to be represented by the Public Defender's Office, and Judge Lane reiterated his refusal to appoint outside counsel. After expressing his view that he had no choice, **Plumlee** affirmed his decision to proceed pro se. **Plumlee** then petitioned the Nevada Supreme Court for a writ of mandamus to compel the appointment of counsel outside the Public Defender's Office. The petition was denied.

**Plumlee** proceeded to trial pro se and was convicted of all charges. He was sentenced to two consecutive life terms without parole for first-degree murder and for the use of a deadly weapon, as well as to two concurrent nine year sentences for robbery and for the use of a deadly weapon.

On direct appeal, **Plumlee** argued, *inter alia*, that the district court abused its discretion when it refused to provide him with counsel outside the Public Defender's Office, causing him to involuntarily serve as his own attorney in violation of his Sixth Amendment right to counsel. The Nevada Supreme Court dismissed the appeal.

Absent a showing of adequate cause, a defendant is not entitled to reject court-appointed counsel and substitute other counsel at public expense.*Thomas v. State*, 94 Nev. 605, 607, 584 P.2d 674, 676 (1978). It is within the sound discretion of the trial court to decide whether friction between counsel and client justifies appointment of new counsel. *Id.* A defendant's refusal to cooperate with appointed counsel is no basis for a claim of inadequate representation. *Id.* at 608, 584 P.2d at 676. "Requiring a defendant to choose between waiving counsel and continuing with present counsel is not constitutionally offensive unless defendant's objections to existing counsel are such that he has a right to new counsel."*State v. Staten,* 60 Wash.App. 163, 802 P.2d 1384, 1387 (Wash.Ct.App.1991). Appellant never showed adequate cause justifying appointment of new counsel, and the court below did not abuse its discretion in refusing to do so.

After his conviction was affirmed on direct appeal, **Plumlee** filed a petition for a writ of habeas corpus in the state trial court. Judge Lane held an evidentiary hearing in connection with **Plumlee's** petition. At the conclusion of the hearing, Judge Lane denied the petition and made several critical factual findings:• Chief Deputy Public Defender O'Neill had neither received, nor leaked, any confidential information regarding **Plumlee's** case.
• Allison was unaware of and did not approve the release of **Plumlee's** car to the lienholder by the police.
• "Owing to **Plumlee's** story, prior to January of 1992, Allison reasonably believed the car was not a crime scene, a part of the crime scene or played any role whatsoever in the commission of these crimes."
• "**Plumlee's** habeas testimony [where] he stressed the importance of his car as the repository of exculpatory evidence is not credible."
• "**Plumlee** presented no credible evidence at the habeas proceeding having a legitimate tendency or reasonable basis for believing that exculpatory evidence ... ever existed, even if Allison, or Mr. Gregory, bothered to go and look for these items."
**\*4** • **Plumlee's** habeas testimony was not credible on the claim that Allison had not notified him about "the job change," referring to Allison's move to the District Attorney's Office.
• Allison was credible in his habeas testimony that he had applied for the position at the District Attorney's Office prior to being assigned **Plumlee's** case and thereafter "did not seek out an interview for the position or even ask about the position while he represented **Plumlee**."
• If Gregory discussed a possible plea deal in his initial encounter with **Plumlee**, he did so in compliance with ethical rules.
• "No material exculpatory evidence was lost or destroyed while **Plumlee** awaited trial."
• "In June and July of 1992, **Plumlee** knowingly and voluntarily waived his constitutional right to counsel, and represented himself until he was convicted; meanwhile, Mr. Gregory was ordered to act as 'standby' counsel."

**Plumlee** appealed the state district court's deni-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
Page 4
--- F.3d ----, 2008 WL 151273 (C.A.9 (Nev.)), 08 Cal. Daily Op. Serv. 645, 2008 Daily Journal D.A.R. 841
(Cite as: --- F.3d ----)

al of his state habeas petition. The Nevada Supreme Court dismissed the appeal, holding:Appellant contends that he did not voluntari[ly] waive his right to counsel, because the district court's improper refusal to appoint substitute counsel made appellant's waiver involuntary. Since there was no error in the district court's refusal to appoint new counsel, as we concluded in the direct appeal, we disagree with appellant's contention that he was forced to represent himself. We conclude that appellant's waiver of his right to counsel was voluntary.

Having exhausted his state post-conviction remedies, **Plumlee** timely filed a federal habeas petition. He presented seven claims in the federal district court. Relevant here is his claim that his Sixth Amendment right to counsel was violated. **Plumlee** claimed that waiver of the right to counsel was involuntary because he was limited to either proceeding pro se or accepting the services of the Public Defender's Office, with whom he had an "irreconcilable conflict." The district court noted four ways in which **Plumlee** believed his representation by the Public Defender's Office created such a conflict: (1) O'Neill's alleged communications of confidential information to Dewey; (2) Allison's alleged deception regarding his intent to take a job at the District Attorney's Office and his subsequent transfer to that position; (3) Gregory's conversations with the prosecutor about the lost bail order against the wishes of **Plumlee**; and (4) " 'miscellaneous other repeated instances of misconduct' on the part of the public defender's office ."

The district court rejected **Plumlee's** claim that he was compelled to represent himself in violation of his Sixth Amendment right to counsel after the trial court denied him alternate representation outside the Public Defender's Office. In arriving at this conclusion, the court found that **Plumlee** could not "show that an *actual* conflict of interest adversely affected the attorney's performance," thus failing to meet the standard established in *Cuyler v. Sullivan,* 446 U.S. 335, 348-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

*5 We now consider **Plumlee's** appeal of the denial of his petition for a writ of habeas corpus in the District of Nevada. We have jurisdiction pursuant to 28 U.S.C. § 2253(a). We review de novo the denial of habeas relief by a district court. *Polk v. Sandoval,* 503 F.3d 903, 909 (9th Cir.2007). Having done so, we affirm the district court's denial of **Plumlee's** petition for a writ of habeas corpus.

II. Discussion

A. Habeas Review Under AEDPA and *Carey v. Musladin*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that
[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As a preliminary matter, we conclude that the state court decision was not premised on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."28 U.S.C. § 2254(d)(2). The state trial court held an evidentiary hearing and its factual findings are supported by the record. *Cf. Miller-El v. Dretke,* 545 U.S. 231, 241 n. 2, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) ("state court factfinding must be assessed 'in light of the evidence presented in the State court proceeding' " (quoting 28 U.S.C. § 2254(d)(2))). These findings are entitled to a presumption of correctness. **Plumlee** has not rebutted them "by clear and convincing evidence." See28 U.S.C. § 2254(e)(1).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----    Page 5
--- F.3d ----, 2008 WL 151273 (C.A.9 (Nev.)), 08 Cal. Daily Op. Serv. 645, 2008 Daily Journal D.A.R. 841
(Cite as: --- F.3d ----)

[1][2] We now turn to whether the Nevada Supreme Court's determination was contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). We review "the 'last reasoned decision' by a state court." *Gautt v. Lewis,* 489 F.3d 993, 1002 (9th Cir.2007) (quoting *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004)). As it pertains to AEDPA, "clearly established federal law" is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *see also Yarborough v. Alvarado,* 541 U.S. 652, 660-61, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

[3] In *Carey v. Musladin,* --- U.S. ----, ---- - ----, 127 S.Ct. 649, 653-654, 166 L.Ed.2d 482 (2006), the Supreme Court recently emphasized that habeas relief is available only if the state court's decision is contrary to or involved an unreasonable application of the *Supreme Court's* own holdings. In that case, the Court reiterated its previously stated instruction that,

"clearly established Federal law" in § 2254(d)(1)"refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision."

*6 *Id.* at 653 (quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). What matters are the holdings of the Supreme Court, not the holdings of lower federal courts.

**B. Supreme Court Jurisprudence**

[4] In *Cuyler v. Sullivan,* the Supreme Court stated that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."446 U.S. at 350. In other words, in order to succeed on a claim based on an alleged conflict, there must be a showing of an *actual* conflict, namely that a defendant's attorney is representing conflicting interests. Conflicting interests have been recognized by the Supreme Court in a variety of settings. *See, e.g., Mickens v. Taylor,* 535 U.S. 162, 164-65, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (recognizing a "potential conflict of interest" when appointed counsel previously represented the murder victim in a separate case); *Wood v. Georgia,* 450 U.S. 261, 270-72, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) (suggesting strong "*possibility* of a conflict of interest" (emphasis in original) when defendants were represented by a lawyer hired by their employer); *Cuyler,* 446 U.S. at 348 ("Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial."); *Holloway v. Arkansas,* 435 U.S. 475, 490, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (noting "in a case of joint representation of conflicting interests the evil-it bears repeating-is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process" (emphasis in original)).

[5] Obviously, the word "conflict" is also used in common parlance to describe a personality conflict, an artistic conflict, a family conflict, and many other sorts of antagonism-even war. In this context, however, as the Supreme Court cases make clear, we are talking about legal conflicts of interest-an incompatibility between the interests of two of a lawyer's clients, or between the lawyer's own private interest and those of the client. *See* BLACK'S LAW DICTIONARY 319 (8th ed.2004). Here, the state court found that **Plumlee's** lawyers had no *actual* conflict of interest, and **Plumlee** does not argue otherwise. Rather, he argues that his relationship with his public defender was dysfunctional due to his subjective distrust of the office and that this created a "conflict," entitling him to new counsel as a matter of Sixth Amendment right.

In *Morris v. Slappy,* the Court held that there is no Sixth Amendment right to "a 'meaningful relationship' between an accused and his counsel," reasoning that, "[n]o court could possibly guarantee

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---- Page 6
--- F.3d ----, 2008 WL 151273 (C.A.9 (Nev.)), 08 Cal. Daily Op. Serv. 645, 2008 Daily Journal D.A.R. 841
(Cite as: --- F.3d ----)

that a defendant will develop the kind of rapport with his attorney-privately retained or provided by the public-that the Court of Appeals thought part of the Sixth Amendment guarantee of counsel."461 U.S. at 13-14.

**\*7** Plumlee has cited no Supreme Court case-and we are not aware of any-that stands for the proposition that the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust. Indeed, *Morris v. Slappy* is to the contrary.

The Supreme Court has held that a defendant is entitled to counsel who "function[s] in the active role of an advocate."*Entsminger v. Iowa,* 386 U.S. 748, 751, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967); *see also United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Anders v. California,* 386 U.S. 738, 743, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).Plumlee has not demonstrated that his attorneys failed to satisfy this obligation or acted unreasonably in the *Strickland* sense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Rather, Plumlee argues that many events that took place throughout his relationship with the Public Defender's Office "caused him to *subjectively* believe that said office and his assigned counsel were not acting ethically and in his best interest."(Emphasis added.) As bases for his "subjective[ ] belie[f] that the Washoe County Public Defender's Office was not acting ethically and in his best interest,"Plumlee points to (1) O'Neill's relationship and alleged discussions with Dewey regarding Plumlee's case; (2) Allison's interactions with the District Attorney's Office and his alleged prevaricating to Plumlee about the situation; and (3) Gregory's handling of the plea proposal and bail order.

Under our precedents, *see, e.g., Schell v. Witek,* 218 F.3d 1017, 1025-26 (9th Cir.2000), Judge Lane had a duty to inquire into the problems with counsel when they were first raised, and he did so. This case is thus unlike *Schell,* 218 F.3d at 1025-26, where the trial court completely ignored a timely motion to remove an appointed lawyer. In contrast, when the matter first came to Judge Lane's attention, he made inquiry and then found no basis for Plumlee's unwillingness to cooperate with Gregory. When he reviewed the matter again years later in connection with the state habeas petition, Judge Lane held a full-blown evidentiary hearing and made extensive findings to the same effect. Plumlee had no valid basis for insisting that the Public Defender's Office, or any of its employees, was leaking information to the D.A.'s Office. This case is thus in the *Morris v. Slappy* category.

### III. Conclusion

The Supreme Court has held that a defendant is constitutionally entitled to a lawyer who is free of conflicts of interest and who can act as a loyal advocate, but he has no constitutional right to a "meaningful relationship" with appointed counsel. Given the facts as they reasonably were found to be, the Nevada Supreme Court did not act contrary to, or unreasonably apply, federal law as determined by the United States Supreme Court in ruling that (1) Plumlee was not entitled to the appointment of a different lawyer, and that (2) his waiver of counsel was not involuntary. Consequently, the district court's denial of Plumlee's petition for a writ of habeas corpus is **AFFIRMED.**

PREGERSON, Circuit Judge, dissenting:

**\*8** It is a universal truth that an indigent criminal defendant "requires the guiding hand of counsel at every step in the proceedings against him."*Gideon v. Wainwright,* 372 U.S. 335, 345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (citation and internal quotation marks omitted). Lary James Plumlee, an indigent criminal defendant, was indicted for armed robbery and murder, and desperately "require[d] the guiding hand of counsel."But because Plumlee's relationship with his Washoe County public defender had been seriously compromised and because the Nevada trial judge refused to appoint new counsel, his only choice was to represent himself. Proceeding pro se, Plumlee was convicted and sentenced to two consecutive

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 151273 (C.A.9 (Nev.)), 08 Cal. Daily Op. Serv. 645, 2008 Daily Journal D.A.R. 841  
(Cite as: --- F.3d ----)

Page 7

life terms in prison. The refusal of the Nevada courts to grant **Plumlee's** habeas petition in these circumstances violates clearly established Sixth Amendment Supreme Court jurisprudence. Thus, I dissent.

I wholeheartedly agree with the opinion rendered by the three-judge panel in this case, an opinion which was vacated when this case was taken en banc. *See* **Plumlee** v. *Del Papa,* 465 F.3d 910 (9th Cir.2006) (vacated). The Supreme Court has held that an indigent criminal defendant is entitled to an attorney who "function[s] in the active role of an advocate."*Entsminger v. Iowa,* 386 U.S. 748, 751, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967); *see also Anders v. California,* 386 U.S. 738, 743, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The Court has also explained that the Sixth Amendment "requires not merely the provision of counsel to the [indigent] accused, but 'Assistance,' which is to be 'for his defence.' " *United States v. Cronic,* 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

Nevada did not provide **Plumlee** with an attorney who could function in the active role of an advocate. Here, as the trial judge found, **Plumlee** had good reason to believe that his representation by the Public Defender's Office was tainted by a conflict of interest. His relationship with his public defenders had deteriorated to the point that **Plumlee** believed that being represented by the Public Defender's Office was worse than having no representation at all. This unhappy situation was recognized by his public defender, who explained that **Plumlee** was "unable to establish an attorney/client relationship with me or any of my colleagues in the Public Defender's office" and that having the Public Defender's Office as stand-by counsel "in effect, gives him no stand-by counsel."Judge Lane, the trial judge, made clear that while he did not believe the public defender's office had betrayed **Plumlee**, he nonetheless believed that **Plumlee's** distrust was reasonable. During the evidentiary hearing on state habeas, Judge Lane noted that "it is clear Mr. **Plumlee** didn't trust, didn't like or trust the Public Defender's Office for reason. And based upon certainly where he was sitting, I can't disagree he had a right to feel that" and that "I can understand why Mr. **Plumlee** felt like he did. I doggone sure can."

The majority's reliance on *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), is misplaced. In *Slappy,* the defendant challenged the trial court's refusal to grant him a continuance so that his preferred lawyer could represent him. The Supreme Court rejected the argument that a defendant had a right to a "meaningful relationship" with his attorney. Here, **Plumlee** did not argue that he was entitled to be represented by any one particular lawyer. Instead, **Plumlee** simply wanted *any* lawyer who could function as an effective advocate. The Supreme Court confirmed this distinction in *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (2006), explaining that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."(citations omitted). Where a criminal defendant has a reasonable, good-faith justification for being unable to work with an appointed lawyer, the Sixth Amendment requires that the court appoint a lawyer who can develop a functioning attorney-client relationship with the indigent defendant.

*9 The majority concludes that Judge Lane's findings that the Public Defender's Office did not betray **Plumlee**, despite appearances to the contrary, resolve the issue. Judge Lane's findings do not, however, change the fact that **Plumlee's** relationship with the Public Defender's Office had deteriorated to the point that he had no attorney functioning in the role of an advocate, in violation of the Sixth Amendment. Accordingly, I dissent.

C.A.9 (Nev.),2008.  
Plumlee v. Masto  
--- F.3d ----, 2008 WL 151273 (C.A.9 (Nev.)), 08 Cal. Daily Op. Serv. 645, 2008 Daily Journal D.A.R. 841

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.